UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:24-cv-20-GNS
[Electronically Filed on 01/28/2024)]

DESTINY BAXTER                                                               PLAINTIFF

V.

TONYA BURTON, Individually and in her official
capacity as Superintendent of Adair County Youth Detention Center,
     SERVE:     Tonya Burton
                       401 Appleby Drive
                       Columbia, KY 42728

CHRISTOPHER RAKES, Individually and in his official
capacity as Juvenile Facility Superintendent Adair County Youth Detention Center,
     SERVE:     Christopher Rakes
                       401 Appleby Drive
                       Columbia, KY42728

ANTHONY W. VICKERY, Individually and in his official
capacity as Youth Worker Adair County Youth Detention Center,
     SERVE:     Anthony Vickery
                       401 Appleby Drive
                       Columbia, Kentucky 42728

CHRISTIN L. WILLIAMS, Individually and in his official
capacity as Youth Worker Adair County Youth Detention Center,
     SERVE:     Christin L. Williams
                       401 Appleby Drive
                       Columbia, Kentucky 42728

GEORGE S. SCOTT, Individually and in his official
capacity as Deputy Commissioner Kentucky Juvenile Justice
     SERVE:     George S. Scott
                       1025 Capital Center Drive, 3rd Floor
                       Frankfort, KY 40601

ROGER DAVID KAZEE, Individually and in his official
capacity as Division Director with Kentucky Juvenile Justice
     SERVE:     Roger David Kazee
                       1025 Capital Center Drive, 3rd Floor
                       Frankfort, KY 40601

GREGORY E. LUNDY, Individually and in his official
capacity as Facilities Regional Administrator
SERVE:         Gregory E. Lundy
                  1025 Capital Center Drive, 3rd Floor
                  Frankfort, KY 40601

                                                  **DEFENDANTS**

## COMPLAINT

Comes the Plaintiff, Destiny Baxter ("Plaintiff"), through Counsel, states her Complaint and causes of action against the Defendants as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter through 28 U.S.C. §1331, 28 U.S.C. §1343(3), and 28 U.S.C. §1367.

2. A substantial part of the events or omissions giving rise to the claim occurred in Adair County, Kentucky and venue lies in the U.S. Western District of Kentucky, pursuant to 28 U.S.C. § 1391(b)(2).

### PARTIES

3. Plaintiff Destiny Baxter is a resident of Kentucky and was held in the Adair County Youth Detention Center in 2022. Destiny turned eighteen (18) years old on January 29, 2023 but will not reach the age of majority under Kentucky law until 2026. See KRS 2.015.

4. Tonya Burton ("Superintendent Burton") is the Superintendent of the Adair County Youth Detention Center and is responsible for the care, custody, and supervision of youth at the Detention center, the conditions of confinement in the Detention Center, for the establishment of policies either formally or by custom and practice, and for the employment,

training, supervision and conduct of its officers and employees. Superintendent Burton is named in her individual and official capacities.

5. Christopher Rakes ("Rakes") is the Juvenile Facility Superintendent of the Adair County Youth Detention Center and is responsible for the care, custody, and supervision of youth at the Detention Center, the conditions of confinement in the Detention Center, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of its officers and employees. Rakes is named in his individual and official capacities.

6. Defendant Anthony Vickery ("Vickery") is a Youth Worker Supervisor of the Adair County Youth Detention Center and is responsible for the care, custody, and supervision of youth at the Detention Center, the conditions of confinement in the Detention Center, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of its officers and employees. Vickery is named in his individual and official capacities.

7. Defendant Christin L. Williams ("Williams") is a Youth Worker at the Adair County Youth Detention Center and is responsible for the care, custody, and supervision of youth at the Detention Center, and the conditions of confinement in the Detention Center. Williams is named in his individual and official capacities.

8. Defendant George S. Scott ("Scott") is Deputy Commissioner of Kentucky Juvenile Justice and is responsible for the care, custody, and supervision of youth at the Detention Center, the conditions of confinement in the Detention Center, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision

and conduct of its officers and employees. Scott is named in his individual and official capacities.

9.  Defendant Roger David Kazee ("Kazee") is East Division Director of Kentucky Juvenile Justice and is responsible for the care, custody, and supervision of youth at the Detention Center, the conditions of confinement in the Detention Center, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of its officers and employees. Kazee is named in his individual and official capacities.

10. Defendant Gregory E. Lundy ("Lundy") is the Facilities Regional Administrator with Kentucky Juvenile Justice and is responsible for the care, custody, and supervision of youth at the Detention Center, the conditions of confinement in the Detention Center, for the establishment of policies either formally or by custom and practice, and for the employment, training, supervision and conduct of its officers and employees. Lundy is named in his individual and official capacities.

## FACTS COMMON TO ALL COUNTS

11. Starting on June 10, 2022, and throughout all points relevant to this complaint, Destiny was detained in the Adair County Youth Detention Center (hereinafter "Detention Center").

12. Destiny has a history of trauma, but upon her arrival in June 2022, she seemed calm, alert, and otherwise well.

13. Lundy was present when Destiny arrived in June 2022, aware of Destiny's baseline and trauma history, and aware of Destiny's deterioration throughout July 2022.

14. Lundy was aware that Destiny was isolated in her room for extended periods of time and it was not being cleaned.

15. Kazee spoke daily with Superintendent Burton and was aware of Destiny's deterioration throughout July 2022.

16. Destiny's history was known by the Department of Juvenile Justice prior to June 2022.

17. Destiny was placed in isolation at the Detention Center. That placement was approved or directed by Superintendent Burton, Rakes, Scott, Kazee, and Lundy.

18. Not only was Destiny isolated in a cell, but Destiny's cell was also isolated from other inmates' cells.

19. On June 30, 2022, Destiny was physically restrained by Detention Center staff.

20. Policy requires that a medical examination be performed following a physical restraint, but no examination was performed.

21. Nurse Alvarado asked youth worker Adrian Hughes about the physical examination, but Nurse Alvarado's request to examine Destiny was denied. Hughes refused to open Destiny's door to allow Nurse Alvarado access.

22. Nurse Alvarado attempted to interact with Destiny and was concerned that Destiny was suffering from some form of severe mental illness or episode.

23. Nurse Alvarado told Nurse Burton about this interaction.

24. The next morning, Nurse Burton decided to try to talk to Destiny but youth worker Anthony Vickery stopped her.

25. Nurse Burton stated that she would check on Destiny, but Vickery said, "No, don't do that; it only makes it worse."

26. Nurse Burton did so anyway because Destiny had been isolated for a long period of time, had been physically restrained, was now showing signs of a mental breakdown, and Destiny had still not had a medical examination.

27. Nurse Burton arrived at Destiny's cell door and opened the flap to Destiny's door to engage her. Destiny was showing signs of increased paranoia and intense confusion. Destiny asserted that "they are going to kill me" and begged Nurse Burton not to shut the flap. Nurse Burton attempted to reorient Destiny to no avail.

28. Nurse Burton was concerned Destiny suffered from something severe that needed immediate medical attention. Nurse Burton called Dr. Simon, who ordered medication for Destiny to help her sleep.

29. After ordering the medication, Nurse Burton told Vickery about her intention to provide Destiny's medication and try to talk with her in order to calm her down. Vickery refused.

30. Vickery asserted that Destiny was "not complying" with orders and that providing her any attention would "only make things worse…"

31. Nurse Alvarado notified Vickery that meds were ordered to assist with sleep, and again, Vickery said that no one would be opening Destiny's door. Eventually, Nurse Alvarado convinced Vickery to allow her to provide Destiny's medication through the flap.

32. Nurse Alvarado went to provide Destiny with medication. After telling her that the medication would help her sleep, Destiny placed the medication in her mouth but did not drink any water. Nurse Alvarado began to leave, and Destiny put her arms through the flap and began begging for help, saying that someone was in her cell and trying to do "bad things" to her.

33. Destiny was not violent but genuinely afraid of something. Nurse Alvarado encouraged Destiny to put her hands and arms back into the cell and reassured her that she was safe.

34. Vickery and youth worker Christin Williams appeared but not at Nurse Alvardao's request. Williams grabbed the flap and Vickery began violently twisting Destiny's arms to shove them back in. Williams also began slamming the flap on Destiny's arms, who was screaming in pain.

35. The flap was far too small for Destiny to pass through physically. Destiny only had a paper cup in the cell. Even had she intended to do anyone harm, it was impossible for her to reach anyone.

36. Defendants Vickery and Williams violently forced her arm back into the cell.

37. Once her arms were back in, Vickery screamed, "Nobody opens the fucking flap" as he kicked the door.

38. Destiny was naked when Defendants Vickery and Williams assaulted her.

39. Vickery eventually stated that it was not anyone in the room's fault that this occurred, but rather that it was "some fucking asshole 80 miles from here who thought this was a good fucking idea." Vickery left the room and slammed the door.

40. Nurse Alvarado told Nurse Burton about the incident. Immediately, Nurse Burton told Superintendent Burton that Destiny needed a shoulder to fingertip x-ray.

41. Superintendent Burton did not order any examination.

42. Nurses Alvarado and Burton told supervisors and higher-ups in the Cabinet and the ombudsman.

43. Destiny's mental health rapidly and precipitously declined.

44. Destiny's cell was not cleaned throughout her extended isolation.

45. On the occasions that she did not immediately accept food, the tray was taken out of her reach and placed on a table in the day room.

46. Destiny continued to remove her clothes and remained naked for long periods of time.

47. On July 5, 2022, Superintendent Burton, Scott, Kazee, and Lundy met regarding the conditions of Destiny's confinement.

48. On July 9, 2022, Deborah Curry sent an email that was received by Superintendent Burton, Rakes, Kazee, and Lundy advising that Destiny's treatment is inhumane, the smell is horrid and "[e]veryday that she is in that dark filthy room, she has less chance of returning to us as Destiny."

49. Youth worker Jamie Settles poked fun at Destiny's condition on her Facebook page, posting a meme. In the comments, she states, "bro, until you can walk past door 26, you don't get to laugh 😄."

50. An emergency medical technician was called on July 18, 2022. Destiny was naked, but Nurse Alvarado was urging her to be treated since she had not eaten in days, and her condition continued to get worse. Superintendent Burton excused the EMT stating that Destiny refused treatment. Nurse Alvarado questioned Destiny's mental ability to refuse but Superintendent Burton smiled at Nurse Burton and said, "she's with it."

51. On July 26, 2022, an emergency medical technician transported Destiny to the local hospital. Destiny was transferred to the University of Kentucky Hospital, but she was not permitted to stay due to her incarceration in the juvenile facility. Defendants kept Destiny's medical records and discharge information from Destiny's medical team.

52. Defendants held Destiny in solitary confinement from June 30, 2022 through July 26, 2022.

53. Upon return from UK Hospital Vickery and Detention Center staff continued to antagonize the medical staff making the working environment extremely hostile.

54. At the direction of Rakes, Vickery prohibited Nurse Burton from opening Destiny's cell door despite the medical instructions of Dr. Van Buren to open the door when Destiny was not hostile.

55. Destiny showed progress towards the end of July 2022 but Detention Center staff incredibly placed Desitny back into solitary confinement in early August 2022.

56. "There is not a single study of solitary confinement wherein non-voluntary confinement that lasted for longer than 10 days failed to result in negative psychological effects." *Williams v. Sec'y Pa. Dep't of Corrs*., 848 F.3d 549, 566 (3d Cir. 2017) (quoting Craig Haney & Mona Lynch, *Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement*, 23 N.Y.U. Rev. L. & Soc. Change 477, 531 (1997)).

57. "[E]ven a few days of solitary confinement will predictably shift the electroencephalogram (EEG) pattern toward an abnormal pattern characteristic of stupor and delirium." *Williams* at 567 (quoting Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash. U. J.L. & Pol'y 325, 331 (2006)).

58. It has "long . . . been understood" that there is a "human toll wrought by extended terms of isolation." *Davis v. Ayala*, 576 U.S. 257, 135 S. Ct. 2187, 2209, 192 L. Ed. 2d 323 (2015) (Kennedy, J., concurring).

59. The Sixth Circuit has acknowledged that, "confinement of a detainee should be assessed "in light of his mental illness," recognizing the "growing consensus" that solitary

confinement "can cause severe and traumatic psychological damage, including anxiety, panic, paranoia, depression, post-traumatic stress disorder, psychosis, and even a disintegration of the basic sense of self identity." *J.H. v. Williamson Cty,* 951 F.3d 709, 719 (6th Cir. 2020) citing *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017).

60. Destiny's solitary cell was filled with garbage and decaying food.

61. The foul odor of her solitary cell was described as unbearable.

62. Superintendent Burton, Rakes, Scott, Kazee, and Lundy were responsible for the recruitment, training, and supervision of youth workers within the facility.

63. Superintendent Burton, Rakes, Scott, Kazee, and Lundy failed to adequately train staff against the use of excessive force.

64. Superintendent Burton, Rakes, Scott, Kazee, and Lundy created an atmosphere where the excessive use of force was acceptable at the Detention Center.

65. Superintendent Burton, Rakes, Scott, Kazee, and Lundy either authorized or failed to prevent or cease the prolonged use of solitary confinement of Destiny Baxter.

66. Superintendent Burton, Rakes, Scott, Kazee, and Lundy failed to adequately supervise employees against the use of prolonged periods of solitary confinement.

## **CLAIMS FOR RELIEF**

### **COUNT 1: VIOLATION OF 42 U.S.C. § 1983**
### **DEPRIVATION OF CONSTITUTIONAL RIGHTS -**
### **EXCESSIVE SEGREGATION AND CONDITIONS OF CONFINEMENT,**
### **FOURTEENTH AMENDMENT VIOLATION**

67. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

68. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress …

69. Plaintiff in this action is a citizen of the United States and Defendants are persons for purposes of 42 U.S.C. § 1983.

70. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as employees of the Kentucky Department of Juvenile Justice, and their acts or omissions were conducted within the scope of these official duties or employment with Kentucky Department of Juvenile Justice at the Detention Center.

71. Defendants, acting under color of law, deprived Plaintiff of her substantial rights secured by the United States Constitution and other laws, along with her constitutional rights guaranteed by the Fourteenth Amendment and Eighth Amendment to the United States Constitution.

72. KRS 635.040 states that "[n]o adjudication by a juvenile session of District Court shall be deemed a conviction, nor shall such adjudication operate to impose any of the civil disabilities ordinarily resulting from a criminal conviction, nor shall any child be found guilty or be deemed a criminal by reason of such adjudication."

73. The Supreme Court established in *Bell v. Wolfish* that, under the due process clause, "a detainee may not be punished prior to an adjudication of guilt." 441 U.S. 520, 535 (1979).

74. Defendants had an expressed intent to punish.

75. Destiny's solitary confinement was not rationally related to a legitimate government objective.

76. The filth, lack of showering, and failure to provide food was not rationally related to a legitimate government objective.

77. In the alternative, if Defendants believed placing Destiny in solitary confinement had a legitimate nonpunitive governmental purpose, it was grossly excessive.

78. Destiny was placed in isolation for 27 days by Defendants.

79. Destiny's solitary confinement was disproportional to any infraction.

80. Destiny's cell was dark, covered in filth, and access to medical personal was restricted.

81. Defendants were aware of Destiny's psychiatric and mental health issues.

82. Destiny was uniquely sensitive and vulnerable, given her age and mental health status.

83. Destiny's extended isolation through solitary confinement caused her rapid decline in her mental health.

84. As a direct and proximate result of Defendants' actions, inactions, and violations of Plaintiff's constitutional rights, Plaintiff suffered physical injury, medical costs, and emotional distress.

85. In addition to compensatory damages, interest, expenses, and court costs, Plaintiff is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

## COUNT 2: VIOLATION OF 42 U.S.C. § 1983
## DEPRIVATION OF CONSTITUTIONAL RIGHTS -
## DELIBERATE INDIFFERENCE

86. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

87. Defendants, acting under color of law, deprived Plaintiff of her substantial rights secured by the United States Constitution and other laws, along with her constitutional rights guaranteed by the Fourteenth Amendment and Eighth Amendment to the United States Constitution.

88. Plaintiff had a serious medical need in the Detention Center in 2022.

89. Defendants' response to Plaintiff's medical needs was objectively unreasonable.

90. Defendants' acts and omissions were a deliberate indifference to Plaintiff's serious medical needs.

91. Defendants denied Plaintiff access to qualified medical personnel.

92. Defendants denied Plaintiff's medical personnel access to Plaintiff.

93. Defendants refused to comply with Plaintiff's doctor's instructions.

94. Defendants' actions or lack of action was deliberate (not accidental).

95. Defendants' actions or lack of action was reckless in the face of an unjustifiably high risk of harm known or so obvious that it should be known.

96. Defendants acted intentionally or in reckless disregard.

97. Defendants, acting under color of state law, deprived Plaintiff of her constitutional rights and is thus subject to liability under 42 U.S.C. § 1983.

98. As a direct and proximate result of Defendants' actions and violations of Plaintiff's constitutional rights, Plaintiff suffered physical injury, medical costs, and emotional distress.

99. In addition to compensatory damages, interest, expenses, and court costs, Plaintiff is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

## COUNT 3: VIOLATION OF 42 U.S.C. § 1983
## DEPRIVATION OF CONSTITUTIONAL RIGHTS -
## VICKERY AND WILLIAMS FOURTEENTH AMENDMENT AND EIGHTH AMENDMENT VIOLATIONS

100. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

101. Defendants Vickery and Williams are persons for purposes of 42 U.S.C. § 1983.

102. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as employees of the Kentucky Department of Juvenile Justice, and their acts or omissions were conducted within the scope of these official duties or employment with Kentucky Department of Juvenile Justice at the Detention Center.

103. Defendants Vickery and Williams maintained an expressed intent to punish Destiny by twisting Destiny's arms and slamming the door flap on Destiny's arms.

104. Defendants Vickery and Williams's use of force was not rationally related to a legitimate government objective and was excessive in relation to that purpose.

105. The Eighth Amendment prohibits the imposition of "cruel and unusual punishments" upon prisoners.

106. Defendants Vickery and Williams used unnecessary and excessive force to violently twist Destiny's arms and slam the door flap on Destiny's arms while she screamed in pain and was suffering from underlying mental health trauma.

107. Defendants Vickery and Williams caused Destiny pain and injuries that were objectively serious.

108. As a direct and proximate result of Defendants' actions and violations of Plaintiff's constitutional rights, Plaintiff suffered physical injury, medical costs, and emotional distress.

109. In addition to compensatory damages, interest, expenses, and court costs, Plaintiff is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

**COUNT 4: VIOLATION OF 42 U.S.C. § 1983**
**DEPRIVATION OF CONSTITUTIONAL RIGHTS**
**SUPERVISOR LIABILITY**

110. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

111. Superintendent Burton, Rakes, Scott, Kazee, and Lundy explicitly and implicitly authorized the specific incidents of misconduct and approved of the misconduct, or knowingly acquiesced in the misconduct of their subordinates.

112. There is a breakdown in the proper workings of the Detention Center, including physical assaults of juveniles, extended solitary confinement, refusal to comply with medical instructions, and inhumane treatment of juveniles.

113. Superintendent Burton, Rakes, Scott, Kazee, and Lundy knew of the breakdown and turned a blind eye to it.

114. Superintendent Burton, Rakes, Scott, Kazee, and Lundy's policies created a systematic deficiency in providing sufficient staffing and medical services.

115. Superintendent Burton, Rakes, Scott, Kazee, and Lundy respective training programs were inadequate to train their employees to carry out their duties.

116. Superintendent Burton, Rakes, Scott, Kazee, and Lundy's respective failures to adequately train, supervise, or discipline their employees was a proximate cause in the violation of the Constitutional rights of Destiny.

117. In addition to compensatory damages, interest, expenses, and court costs, Plaintiffs are entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

## COUNT 5: STATE LAW TORT CLAIM FOR BATTERY

118. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

119. Defendants Vickery and Williams intentionally and maliciously used force unlawfully directed at Plaintiff and under such circumstances as to create in Plaintiff a well-founded fear of immediate peril, when they violently twisted Destiny's arms and slammed the door flap on Destiny's arms.

120. As a direct and proximate result of Defendants' battery of Plaintiff, Plaintiff has suffered physical and emotional injuries and as a direct result of those injuries, Plaintiff has incurred and will likely continue to incur future expenses.

121. Defendants Vickery and Williams acted with reckless disregard or callous indifference to the rights of Plaintiff and are liable for punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

A. A judgment, jointly and severally, in Plaintiff's favor against Defendants, for his actual and punitive damages;

B. An award of attorney fees, costs, and expenses incurred in prosecuting this action, pursuant to 42 U.S.C. § 1988;

C. Pre and post judgment interest;

D. A trial by jury, and

E. All other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ Gregory E. J. Coulson
COUNSEL FOR PLAINTIFF

| | |
|---|---|
| Joseph D. Buckles, Esq. | Gregory E. J. Coulson, Esq. |
| BUCKLES LAW OFFICE, PLLC | COULSON LAW OFFICES, PLLC |
| 149 North Limestone | 149 North Limestone Street |
| Lexington, Kentucky 40507 | Lexington, Kentucky 40507 |
| (859) 225-9540 | 859.412.1903 |
| (859) 251-6020 | 859.212.3102 (fax) |
| Joe@JoeBuckles.com | greg@defendky.com |